# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Dan and Leanne Abelmann, | ) |
|     Plaintiffs and Counterclaim Defendants, | ) |
| vs. | ) |
| SmartLease USA, LLC, | ) |
|     Defendant, Counterclaimants, and Third-Party Plaintiffs | ) **ORDER** |
| vs. | ) |
| | ) Case No. 4-14-cv-40 |
| Executive Housing Solutions, LLC, Ray Wurth, Don Gibson, and Richard Church a/k/a Chad Church, d/b/a Executive Housing Solutions, LLC; | ) |
|     Third-Party Defendants. | ) |

Before the court is SmartLease USA, LLC ("SmartLease")'s Motion to Consolidate Cases. (Doc. No. 91).[1] In the motion, Smart Lease seeks to consolidate this case with <u>Furst et al. v. Abelmann et al.</u>, Case No. 1-17-cv-85. Dan and Leanne Abelmann (the "Abelmanns") oppose the motion. (Doc. Nos. 95, 96). The Third-Party Defendants have not filed a response, and their time for doing so has lapsed. D.N.D. Civ. L. R. 7(A)(1), 7(F).

## I. BACKGROUND

This action arises from a mobile home/RV park development gone awry in McKenzie County

---

[1]Although Smart Lease filed an initial memorandum in support of its motion, (Doc. No. 92), SmartLease also filed an amended memorandum. (Doc. No. 94). Because none of the adverse parties have taken exception with this filing, the court will treat the amended memorandum as Smart Lease's submission in support of its motion.

-1-

during the height of the Bakken boom. Multiple disputes have arisen between SmartLease, Steve Furst, Kent Guthrie, Anthony Marshall, and the Abelmanns. The North Dakota Supreme Court outlined the broad parameters of the parties' dealings:

> [¶2] SmartLease is a limited liability company with three principals, Kent Guthrie, Tony Marshall, and Steve Furst, which described itself in a business proposal as an entity seeking "to capitalize on the demand for quality housing [in the Williston Basin] by providing a high quality, exceptionally clean and professionally managed RV/mobile park" in partnership with a landowner. The Abelmanns own farmland in the Williston Basin in McKenzie County.
>
> [¶3] On December 18, 2011, the Abelmanns executed a written agreement to lease approximately 110 acres of their farmland to SmartLease for the stated purpose of "use as a short/long term RV (recreational vehicle), mobile home, cabin units, and truck parking." Under the lease, SmartLease agreed "to use and occupy the Demised Premises for the purposes of operating a high quality, clean and professionally managed RV/mobile home/cabin park, truck parking and supporting services." The lease initially authorized SmartLease to lease the Abelmanns' land from November 1, 2011, through October 30, 2016, and granted SmartLease an option to renew for successive 3 year terms for up to 39 years. On November 10, 2012, the parties executed a written addendum to the lease, which extended the lease renewal term for up to 99 years and granted SmartLease a three-year option to buy some or all of the land for $20,000 per acre.
>
> [¶4] Under the lease, SmartLease agreed to pay the Abelmanns monthly rent consisting of fixed fees for each housing lot and truck parking space rented in the RV park and to pay a $25 monthly damage deposit for every housing unit rented in the RV park until the amount of $50,000 was paid. . .
>
> [¶5] The lease required SmartLease to obtain public liability insurance naming the Abelmanns as an additional insured for its operations on the land during the entire term of the lease. The lease authorized SmartLease to construct a sewage treatment system on the premises, and SmartLease agreed to pay for all heat, gas, power, electricity, and utilities furnished to the premises during the term of the lease. The lease granted SmartLease peaceable and quiet enjoyment of the premises free from eviction if SmartLease paid the rent and other charges provided under the lease and otherwise fully and punctually performed the terms and conditions of the lease. The lease stated it represented the entire agreement between the parties with no other oral or collateral agreements or understandings between the parties.
>
> [¶6] In April 2012, the Abelmanns and the three principals of SmartLease executed

an agreement to form Ranger Rock, L.L.C., to mine all gravel, clay, and dirt in the quarry in or near the Abelmanns' existing gravel pit and to stockpile "rubble" brought to that site. The agreement authorized Ranger Rock to provide SmartLease material from the gravel pit at no charge for the development of SmartLease's "existing project." Under that agreement, the Abelmanns received 56 percent of Ranger Rock's income from the gravel pit and the other three members of Ranger Rock received 44 percent of the income.

[¶7] According to the Abelmanns, SmartLease agreed to develop the leased land into a high quality, clean, and professionally managed full service RV and mobile home park for housing and accommodations for the labor force in northwestern North Dakota. They claimed SmartLease started to develop the land, but thereafter neglected its obligations under the written lease. They asserted SmartLease failed to pay them rent or the security deposits required by the lease and failed to provide proper management for the land. According to them, a property manager hired by SmartLease, Aaron Smith, failed to provide proper on-sight management for the property and eventually quit, which resulted in no on-site management for the property. They claimed SmartLease asked Leanne Abelmann to collect rent from tenants while SmartLease sorted out the management problems. They also asserted SmartLease failed to: (1) maintain roads for the property; (2) install and maintain appropriate sewage facilities; (3) install appropriate electrical service for the property; (4) maintain portable toilets; (5) maintain proper signage for the RV park; (6) obtain financing to properly develop the property; (7) obtain proper insurance; and (8) professionally manage and develop the property. They asserted they provided SmartLease with written notice of termination of the lease in February 2013, and claimed SmartLease refused to vacate the premises and attempted to transfer the lease to a third party.

[¶8] According to SmartLease, it never anticipated the RV park would become fully operational immediately and it diligently developed the property from farmland into an RV park, including investing more than $500,000 in the project, having the land rezoned from agricultural to residential use, generating income from camper and truck parking by February 2012, and arranging for sewage and water facilities on the land. SmartLease claimed Furst lived with the Abelmanns while he managed the property from the fall of 2011 until he became sick in September 2012, and Aaron Smith then managed the property until he quit working for SmartLease in January 2013. SmartLease asserted it had Leanne Abelmann assume management of the property after Aaron Smith quit in January 2013. SmartLease claimed it was current on its rent payments to the Abelmanns until Leanne Abelmann began collecting rent from the tenants and SmartLease asserted its efforts generated substantial income for the Abelmanns, including more than $43,000 in rent from the RV park and more than $270,000 in gravel sales. SmartLease asserted its efforts resulted in an offer to purchase the land in January 2013 for nearly 5 million dollars. SmartLease also

claimed the Abelmanns attempted to terminate the lease only after learning the property, which was subject to SmartLease's option to purchase for $20,000 per acre, had substantially increased in value.

Abelmann v. SmartLease USA, L.L.C., 2014 ND 227, ¶¶ 2-8, 856 N.W.2d 747. In addition to the eviction action before the North Dakota Supreme Court, the unraveling of the business relationships between SmartLease, its principals, and the Abelmanns spawned two federal actions.

A. Abelmann et al. v. SmartLease, USA, L.L.C.— Case No. 4-14-cv-40 ("Abelmann I")

As the North Dakota Supreme Court outlined, the Abelmanns leased property in McKenzie County to SmartLease for development of a mobile home/RV park. (Doc. No. 37-2). Generally speaking, the lease allowed SmartLease to develop the Abelmanns' property subject to a number of conditions. The Abelmanns subsequently executed an addendum extending the lease's renewal term to ninety-nine years and granted SmartLease an option to purchase a certain portion of the Abelmanns' property for a fixed amount. (Doc. No. 37-3).

In Abelmann I, the Abelmanns sued SmartLease for breach of contract, breach of fiduciary duty, and fraud. (Doc. No. 37). In their complaint, the Abelmanns allege SmartLease breached a litany of obligations and conditions imposed under the lease, including not properly supervising the property, not properly developing the property, not obtaining the financing necessary to develop the property, not properly remitting restoration amounts, not maintaining proper insurance, etc. The Abelmanns also alleged SmartLease breached a fiduciary duty owed to them and committed fraud by not disclosing pertinent facts related to the execution of the lease addendum. In their prayer for relief, the Abelmanns seek a declaration that the lease has terminated, monetary damages for the alleged breaches of contract, and rescision of the lease addendum.

After answering, SmartLease counterclaimed against the Abelmanns. (Doc. No. 68). In the

counterclaim, SmartLease sough specific performance under the lease so as to allow it to continue using the Abelmanns' property. SmartLease also alleged the Abelmanns breached the lease by interfering with SmartLease's right to quiet enjoyment of the property. SmartLease also alleged the Abelmanns had been unjustly enriched by services and material provided by SmartLease in developing the Abelmanns' property. Finally, SmartLease alleged the Abelmanns committed tortiuous interference with contract and unlawful interference with business by using the state court eviction action, culminating in the appeal to the North Dakota Supreme Court, to SmartLease's detriment by causing a failed sale of the property.

In addition to the counterclaim, SmartLease filed a third-party complaint against Executive Housing Solutions, LLC, Ray Wurth, Don Gibson, and Chad Church (collectively "EHS").[2] (Doc. No. 68). SmartLease and EHS executed an agreement under which EHS was to help SmartLease develop the Abelmanns' property by providing sanitation and maintenance services. SmartLease's complaint alleged EHS breached this contract in a number of ways, including failure to provide proper sanitation services, unauthorized use of gravel, failure to pay necessary rent, and failure to complete other projects, resulting in monetary damages and unjust enrichment. Additionally, SmartLease alleged EHS unlawfully interfered with SmartLease's business by colluding with the Abelmanns to have SmartLease evicted by way of the state court action and this collusion caused SmartLease to lose out on a potential sale of the property.

B. Furst et al. v. Abelmann—Case No. 1-17-cv-85 ("Abelmann II")

As contemplated in the Abelmanns' lease with SmartLease, the Abelmanns and three principals from SmartLease—Steve Furst, Kent Guthrie, and Anthony Marshall—formed Ranger

---

[2]SmartLease subsequently and voluntarily dismissed Chad Church from the action. (Doc. No. 90).

Rock, LLC ("Ranger Rock"). These members formed Ranger Rock for the purpose of mining a gravel pit that was either adjacent to or near the mobile home/RV development, with the Abelmanns signing an operating agreement allowing Ranger Rock to mine the gravel pit. (Doc. No. 1-1). Subsequently, Ranger Rock leased the gravel pit to Red Canyon Contractors, Inc. ("Red Canyon"). (Doc. No. 1-2). According to Furst, Guthrie, and Marshall, Red Canyon allegedly defaulted under the lease by failing to pay for all materials taken from the gravel pit, with approximately $430,000 outstanding for materials removed. Furst, Guthrie, and Marshall allegedly negotiated with Red Canyon and Red Canyon agreed to pay all amounts owing under its lease with Ranger Rock. As represented to the court, Red Canyon was unable to perform under this subsequent agreement because the Abelmanns denied it access to the property by force and threats of physical violence.

The unraveling of the relationship between Furst, Guthrie, Marshall, and the Abelmanns led to the initiation of Abelmann II, wherein Furst, Guthrie, and Marshall, as members of Ranger Rock, brought suit against the Abelmanns, also in their capacities as members of Ranger Rock. Furst, Guthrie, and Marshall allege the Abelmanns breached various fiduciary duties towards other members of Ranger Rock by denying Red Canyon access to the gravel pit and by failing to account for all materials sold from the property. Additionally, Furst, Guthrie, and Marshall seek a court order dissolving Ranger Rock and a final accounting regarding Ranger Rock's operations.

## II. DISCUSSION

SmartLease argues consolidation of Abelmann I and Abelmann II is warranted because each concerns a facet of the larger business relationship that existed between SmartLease, Furst, Guthrie, Marshall, and the Abelmanns. SmartLease argues consolidation will provide economy for both the court and the parties because both actions largely concern the same documentation, parties, and facts.

The Abelmanns disagree, arguing the actions are dissimilar and consolidation of the two actions would only serve to confuse a trier of fact and would not further judicial economy.[3]

Under Fed.R.Civ.P. 42(a)(2), the court may consolidate multiple actions before the court involving a common question of law or fact. "[C]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another." Enter. Bank v. Saettele, 21 F.3d 233, 235 (8 th Cir. 1994) (quoting Johnson v. Manhattan Ry., 289 U.S. 479, 496–97 (1933)). "Consolidation is inappropriate, however, if it leads to inefficiency, inconvenience, or unfair prejudice to a party." E.E.O.C. V. HBE Corp., 135 F.3d 543, 551 (8th Cir. 1998). Whether to allow consolidation is left to this court's discretion. Enter. Bank, 21 F.3d at 235. The moving party bears the burden of demonstrating the propriety of consolidation. Ecolab Inc. v. Schmidt, Case Nos. 2:15-cv-2; 2:15-cv-3, 2015 WL 12803640 at *2 (D.N.D. August 11, 2015).

After carefully considering the claims at issue in both cases, as well as all documentation submitted therein, the court concludes consolidation of Abelmann I and Abelmann II is not warranted. At its essence, Abelmann I involves competing breach of contract claims by and amongst the Abelmanns, SmartLease, and EHS concerning the failed development of the mobile home/RV development. SmartLease has not, to the court's satisfaction, shown how these claims are related to the dispute between squabbling members of an LLC regarding development of a gravel pit at the heart of Abelmann II. Although the two actions are rooted in conduct that occurred in similar time

---

[3]The Abelmanns also argue the court should not consolidate the cases because this court lacks subject matter jurisdiction over Abelmann II and the Abelmanns have moved to dismiss on that ground. (Abelmann II Doc. No. 24). Because Abelmann I and Abelmann II are not sufficiently similar to warrant consolidation, the court need not address that issue for purposes of the current motion in this case.

and space, the primary claims driving each action lack sufficient commonality, whether that be in fact or law. For instance, whether SmartLease breached the lease with the Abelmanns has no bearing on whether the Abelmanns violated various fiduciary duties owed to other members of Ranger Rock. In a different vein, whether SmartLease committed fraud in inducing the Abelmanns to execute the lease addendum has no bearing on whether the court should dissolve Ranger Rock. These are but a few of the contrasts that can be drawn making clear the primary catalysts of <u>Abelmann I</u> and <u>Abelmann II</u> are too inapposite for much benefit to be derived from consolidation. This is before considering that <u>Abelmann II</u> in no way concerns EHS. In short, these cases simply do not involve the common questions of law or fact that Fed.R.Civ.P. 42(a)(2) contemplates in allowing consolidation, and SmartLease has failed to carry its burden in this regard.

The potential for confusion caused by consolidation easily outweighs any nominal resulting benefit. Given the nature and posture of the acitons, the court has concerns evidence admissible as to issues in one action, but inadmissible as to issues in the other action, may impermissibly leach into the fact finder's conclusions in a way that would not occur if the two actions were to remain seperate. For instance, if Furst, Guthrie, and Marshall substantiate their allegation the Abelmanns closed access to their gravel pit through force and the threat of physical violence in <u>Abelmann II</u>, the fact finder might use such information against the Abelmanns to excuse SmartLease's performance under the lease in <u>Abelmann I</u>. Conversely, if the Abelmanns substantiate their allegation regarding SmartLease's vastly deficient performance under the lease in <u>Abelmann I</u>, the fact finder might be inclined to excuse the Abelmanns' various failures as members of Ranger Rock in <u>Abelmann II</u>. In either instance, and numerous others that can be conjured up in these cases, consolidation risks allowing information relevant to one action to taint the other's outcome. Such risks easily outweigh

any marginal benefit to be derived from consolidation.

The above conclusion notwithstanding SmartLease is correct in noting some overlap exists between Abelmann I and Abelmann II in that each is a subplot of the larger tangled mess that is the failed business relationship between SmartLease, Furst, Guthrie, Marshall, and the Abelmanns. SmartLease is correct in noting most of the conduct animating the two actions occurred during the same time frame and this conduct involved a common cast of characters. This commonality, however, is merely tangential when considered in the context of the issues presented in the two actions. While the court recognizes discovery in the two actions may cover the same factual grounding, including multiple depositions of the same individuals, that inefficiency alone is not enough to warrant consolidation here. If anything, such considerations would better justify consolidating the cases for the limited purpose of conducting joint discovery, which could potentially avoid unnecessary duplication in the discovery processes while also avoiding the risks discussed above. Whether that limited consolidation would be appropriate is for another day, but it is clear that the circumstances of these cases do not warrant complete consolidation under Fed.R.Civ.P. 42(a)(2).

### III. CONCLUSION

Based on the foregoing, SmartLease's motion to consolidate, (Doc. No. 91), is **DENIED** and Smartlease's motion to amend, (Doc. No. 93), is **MOOT**.

**IT IS SO ORDERED.**

Dated this 17th day of October, 2017.

/s/ Charles S. Miller, Jr.
Charles S. Miller, Jr., Magistrate Judge
United States District Court