IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Dan Abelmann and the Estate of Leanne Abelmann, as successor-in-interest to Leanne Abelmann, deceased, <br><br> Plaintiffs and Counterclaim Defendants, <br><br> vs. <br><br> SmartLease USA, LLC, <br><br> Defendant, Counterclaimant, and Third-Party Plaintiff, <br><br> vs. <br><br> Executive Housing Solutions, LLC; Ray Wurth, Don Gibson, and Richard Church a/k/a Chad Church, d/b/a Executive Housing Solutions, LLC; Ray Wurth, Don Gibson, Richard Church a/k/a Chad Church, <br><br> Third-Party Defendants | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR DEFAULT JUDGMENT AND OTHER RELIEF AS TO ITS THIRD-PARTY CLAIMS** <br><br> Case No. 4:14-cv-040 |

Before the court is a motion by defendant, counterclaimant, and third-party defendant SmartLease USA, LLC ("SmartLease") for default judgment and other relief for alleged perjury and other litigation misconduct by defendant Ray Wurth ("Wurth") both personally and as a principal of defendant Executive Housing Solutions, LLC ("EHS"). For the reasons set forth below, the motion is granted in part and denied in part.

I. **BACKGROUND**

When this case was originally commenced, SmartLease named Richard Church ("Church") as a third-party defendant along with EHS, Wurth, and another individual, Don Gibson. SmartLease

1

alleged in the third-party complaint that Church was acting in concert with EHS and its principals and was their representative in dealings with the named plaintiffs

One law firm entered appearances for all of the named third-party defendants, including Church. On behalf of Church and the other named third-party defendants (the "EHS defendants"), the law firm sought a dismissal of Church without prejudice in exchange for an acknowledgmnet by EHS that Church was its employee. This acknowledgment would have obvious implications for EHS's potential liability for Church's acts. After some back and forth on this subject, the attorneys for Church and the EHS defendants communicated in part the following to the attorneys for SmartLease on June 29, 2016:

> I have verification from the clients that Chad [Church] was an employee of EHS at the relevant times. Let me know if you need anything in the way of verification on that point prior to filing a notice of dismissal without prejudice.

(Doc. No. 165-4).

The attorneys for SmartLease, however, wanted more and this resulted in Wurth providing a signed affidavit dated July 10, 2016, stating under oath in relevant part the following:

> I, Ray Wurth, being duly sworn, state as follows:
>
> 1. I am over the age of 18 and am competent to testify about the matters contained herein. This Affidavit is based upon my personal knowledge.
>
> 2. I have reviewed the Third-Party Complaint of SmartLease USA, LLC ("SmartLease") filed in the above-captioned action.
>
> 3. I am a member of Executive Housing Solutions, LLC ("EHS").
>
> 4. Richard "Chad" Church is a former employee of EHS.
>
> 5. Mr. Church, in his capacity as an employee of EHS, dealt with Dan and Leanne Abelmann in relation to some of the events giving rise to the allegations presented against EHS in the above-captioned action.
>
> 6. To the best of my knowledge, all of Mr. Church's dealings with the Abelmanns concerning SmartLease, EHS, and/or any of the allegations contained in the pleadings in the

> above captioned action were [in] Mr. Church's capacity as an employee of EHS and not in his capacity as an individual.

(Doc. No. 149-13). After counsel for Church and the EHS defendants forwarded Wurth's signed affidavit to counsel for SmartLease, Church was dismissed from the action without prejudice.

Some three years later, Wurth was deposed and initially provided the following testimony with respect to whether Church was an employee of and had represented EHS in his dealings with the plaintiffs:

> Q. And was he [Church] employed by EHS?
>
> A: He was not.

(Doc. No. 165-1, p. 34). Then, when confronted with his affidavit and asked whether it was true, Wurth testified Church was not a traditional employee, in that he got free housing and a cell phone but no wages, and that he was on more of a 1099 agreement type of deal. Then, after some confusing testimony about whether Church represented EHS in some capacity but was not paid for it, there was the following exchange:

> Q. Okay. So he was representing EHS in the dealings with the Abelmanns?
>
> A. No.
>
> [objection omitted]
>
> A. Yeah. I mean, its not - - no, that's not correct. He was not - - he would not go over and represent EHS. He was working with Dan and Leanne. He and Leanne had a relationship - a personal relationship. So he did a lot of stuff for Leanne that EHS or myself or Don were never privy to.

(Id. at p. 35).

Following this, SmartLease's counsel directed Church to what he had stated in paragraph 5 of his affidavit and asked whether it was true. Wurth responded:

> A. Except for the employee part which - -

3

> Q. Okay. But he was then - -
>
> A. He dealt with Dan and Leanne.
>
> Q. - - representing - -
>
> A. He wasn't representing EHS. I'll say that again. He was not representing EHS. He would work with Dan and Leanne; and anything that arose, he would help Leanne do stuff - - he would bring it our attention and that sort of thing but never in a capacity of - - working for EHS.

(Id. at p. 36). Then, with respect to paragraph 6 of the affidavit in which Wurth stated that to the best of his knowledge *all* of Church's dealing with the plaintiffs were in his capacity as an employee of EHS and not in his individual capacity, Wurth stated: "Well, I guess my recollection after three or four years changed. " (Id. at pp. 36-37.) Wurth then went on to acknowledge he was fully aware of the significance of his testimony. He interrupted counsel, stating "Oh, I know why it's critical." (Id. at p. 39). And with respect to the suggestion that SmartLease had relied upon his affidavit in dismissing Church from the action, Wurth responded: "Well, so." (Id. at p. 40). Finally, when SmartLease's counsel asked for further explanation, Wurth refused, stating: "I just answered that question. I'm not going to answer it again" and then, most tellingly, stated: "You're welcome to subpoena Chad. He's in Croatia." (Id.).

Following a break in the deposition testimony, Wurth was again asked about his affidavit and admitted Church had done some work for EHS as a benefits employee. He further acknowledged Church had represented EHS in some dealings with the plaintiffs but only ones that EHS had knowledge of at the time, claiming this was consistent with his affidavit. (Id. at pp. 41-43).

## II. DISCUSSION

In the motion now before the court, SmartLease asks the court to grant relief for what it claims was Wurth's perjury and other litigation misconduct in his deposition testimony. The relief

4

that SmartLease seeks is for the court to enter a default judgment in its favor on its claims against Wurth and the other EHS defendants. In the alternative, SmartLease requests that the court direct the jury that Church was an employee of EHS.

In response, Wurth has parsed the language of the affidavit, claiming his testimony taken as a whole was consistent with it. Further, even if it was not, Wurth argues that the relief SmartLease is seeking is not justified and that SmartLease can use the affidavit to impeach him. Further, and equally troublesome as the deposition testimony in light of the sworn affidavit is Wurth's further argument that SmartLease has only itself to blame because it waited some three years to depose him and discover his position may have changed. In so arguing, Wurth apparently takes the position he had no affirmative obligation to correct his affidavit if he believed the statements in it had been erroneously made.

After carefully reviewing Wurth's deposition testimony, the court's view is that Wurth has backed up from what he represented in his affidavit. While it is difficult to tell from his testimony exactly how much since his testimony was all over the waterfront, it is clear enough that his testimony—taken most charitably— at the very least is contrary to the representation in his affidavit that, to the best of his knowledge, "*all* of Mr. Church's dealings with the Abelmanns concerning SmartLease, EHS, and/or *any of the allegations contained in the pleadings* in the above captioned action were [in] Mr. Church's capacity as an employee of EHS and not in his capacity as an individual."

This is not a situation where the only thing that has happened is a party having deviated from an affidavit or earlier sworn testimony based upon a change in recollection. The recourse for the possibly aggrieved party in that situation is the ability to use the earlier contrary statements as impeachment and let the fact-finder ascertain the truth. Here, Wurth and the other EHS defendants,

5

through their counsel, requested that SmartLease change its litigation position and dismiss Church from the action based on the representation that Church was an employee of EHS and then reaffirmed that with Wurth's affidavit. And now SmartLease will be prejudiced given that it is too late to implead Church. Further, while the court believes that SmartLease is entitled to relief for these reasons alone, the court is particularly troubled by Wurth's statements that suggest his change in position (if not also of the other EHS defendants) is calculated and with full understanding of the problems this would create for SmartLease.

SmartLease argues that the appropriate relief is for the court to enter a default judgment in its favor on its claims against the EHS defendants. The court disagrees. The ultimate sanction of a default judgment would be too drastic, particularly given that SmartLease would not necessarily prevail at trial even if Church was an employee of EHS.[1] Further, there is relief that the court can grant that is more-tailored to the situation. See, e.g., Chemtall, Inc. v. Citi-Chem, Inc., 992 F. Supp. 1390, 1409-10 (S.D. Ga. 1998) (discussing circumstances under which the ultimate sanction of default judgment would be appropriate).

The relief that the court will grant is that it will not allow the EHS defendants to back up from what was represented in Wurth's affidavit and possibly other relief short of a default judgment.[2] How this will be accomplished will be determined at trial following one or more hearings held outside the presence of the jury. At a minimum, the relief will take the form of not

---

[1] In fact, from what the court has observed, even if Church was an employee of EHS, SmartLease's claims for damages are weak and may be on life-support.

[2] Another reason that supports the court proceeding in this manners is that it most likely (but with no guarantee at this point) alleviates the necessity of Wurth's attorneys from becoming witnesses at trial based on the representations they made and the potential relevancy of advice they provided to Wurth with respect to the representations they made, the wording and consequences of the affidavit, and the legal consequences of Church being deemed an employee of EHS.

6

permitting the EHS defendants to present testimony or other evidence that is contrary to the Wurth affidavit, special instructions to the jury, or some combination of the two. Wurth and the other EHS defendants should be prepared to give testimony during the hearings on this issue if the court determines it is appropriate and necessary at the time.[3]

The court has the power to grant the foregoing relief being awarded based upon its inherent power to prevent fraud upon the court and its processes. See, e.g., Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991); Nichols v. Klein Tools, Inc., 949 F.2d 1047, 1048-49 (8th Cir. 1991). For this reason, the court need not dwell upon whether the relief that is being granted is also provided for by one or more of the federal procedural rules or statutes.

SmartLease asks the court to award attorney fees for this motion. There is support for such an award. See id. However, the court is going to reserve ruling on this part of the motion and will hold a hearing on the issue and the amount, if any, to be awarded. The hearing will be held immediately following the submission of the case to the jury or other conclusion of the trial. At the hearing, the court will consider further argument on the issue and determine the amount of fees and costs to be awarded, if any. Further, at the hearing, Wurth and the other EHS defendants should be prepared to give testimony if the court concludes at the time it would be relevant and necessary.

## III. ORDER

Based on the foregoing, the court hereby **GRANTS IN PART** and **DENIES IN PART**

---

[3] SmartLease argues that, if the court does not enter default judgment, it should instruct that Church was an authorized agent of EHS as to all matters. However, this would take from the jury any potential issues over the scope of actual or apparent authority (as it may relate to contractual liability) and scope of employment (as it may relate to tort liability) that may be beyond what is fairly contemplated by the affidavit and representations of EHS's counsel. See, e.g., NDJI C-55-06 (an agent represents the principal for all purposes within the scope of the agent's actual or apparent authority) & (C-55.13 (employer responsible for fault of employee for conduct that is within the scope of employment). At this point, the court is not prepared to go that far.

7

SmartLease's motion for default judgment and other alternative relief (Doc. No. 163) as follows:

1. The court denies SmartLease's request for a default judgment on its claims against Wurth and the other EHS defendants. However, the court will not permit the EHS defendants at trial to deviate from the statements and representations made in Wurth's sworn affidavit. The particular mechanics of how this will be accomplished as well as possibly providing other relief short of directing judgment on SmartLease's third-party claims will be determined at trial following one or more hearings held outside the presence of the jury. Wurth and the other EHS defendants should be prepared to give testimony during the hearings if the court determines that it is necessary.

2. SmartLease shall have until April 1, 2020 to submit (1) a verified statement of the attorney fees and costs being claimed by its motion, including supporting documentation, and (2) any supplemental brief on the subject that it deems is warranted, including addressing whether any award of fees and costs should be restricted to Wurth or should extend to the other EHS defendants as well. Wurth and the other EHS defendants shall have until April 17, 2020, to submit (1) any objections to the amounts of fees and costs being claimed along with an explanation for the objections, and (2) any supplemental brief on the issue, including addressing whether any award of fees and costs should be limited to Wurth or should also extend to the other EHS defendants. The court will hold a hearing immediately following the submission of the case to the jury or other conclusion of the trial to consider the request for attorney fees and costs. Wurth and the other EHS defendants

should be prepared to give testimony during the hearing if the court determines that it is necessary.

**IT IS SO ORDERED**.

Dated this 3rd day of March, 2020.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court